BARNET FINE *v.* LOUIS FINE ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued December 5, 1961—decided February 20, 1962

*George A. Saden,* with whom, on the brief, was *James W. Macauley, Jr.,* for the appellants (defendants).

*Irwin E. Friedman,* with whom were *Arthur Levy, Jr.,* and, on the brief, *Samuel E. Friedman* and *Joseph P. Zone,* for the appellee (plaintiff).

MURPHY, J. The plaintiff, a Stamford physician, brought suit against his brother Louis, his brother's wife, Jean, their son Richard and her brother, Sidney Weisfeld, a New York attorney, to recover damages for an assault and battery and for the conversion of two violins, a painting, a check for $500, and $125 in cash. The complaint is in two counts. The jury returned a verdict for the defendants on the first count, which alleged the assault and battery, and for the plaintiff to recover damages of $23,500, plus interest, from all of the defendants on the second count, which alleged the conversion. The defendants filed a motion to set aside the verdict. The court denied the motion. The defendants have appealed from the judgment rendered on the verdict. The plaintiff has not appealed from the judgment for the defendants on the first count.

The record presents a rather bizarre and confusing portrayal of the financial dealings of the plaintiff and his brother Louis with a third brother, Joseph, which underlay the events out of which this litigation arose. Error is assigned in the finding,

in the denial of the motion to set aside the verdict, in the charge, in rulings on evidence and in the submission of inconsistent forms of verdict to the jury. The last-mentioned claim is embraced in an exception to the charge. The rule that a charge is to be tested by the claims of proof in the finding applies. *Sears* v. *Curtis,* 147 Conn. 311, 316, 160 A.2d 742.

With such minor corrections as the defendants are entitled to, the finding shows that the plaintiff claimed to have proved that on November 3, 1955, he was the owner of a Guarnerius and a Bergonzi violin and a small painting of the school of Rubens. He was interested in selling them to obtain money to meet a note for $25,000 which he had endorsed for Joseph. Prior to November 3, 1955, the plaintiff had discussed, with both Louis and Richard, his financial involvement. Richard offered to assist in selling the violins and the painting and drove the plaintiff to New York on November 3 to pick them up in order to show them in Greenwich to an agent of a prospective buyer. In New York, the plaintiff picked up four violins, one being a Stradivarius. He carried the four in two double violin cases. The plaintiff and Richard returned to Stamford, where the plaintiff made a stop at his own house. The plaintiff and Richard then started for Greenwich. Richard said he wanted to stop at his father's house, which was in Stamford. On arriving there, they both entered the house. The plaintiff was carrying the violins and the painting. Inside, they were met by Louis, his wife, a daughter, Vivien, the defendant Weisfeld and three strange men, one tall, one of medium height and one short. Someone took a violin case away from the plaintiff. The three strangers took him into another room,

beat him up and, after calling Louis into the room, threatened to take the plaintiff "for a ride." They forced him to sign papers transferring the Guarnerius and Bergonzi violins and the painting to the defendant Jean. They also forced him to make out two checks for $500 each and extracted $125 in cash from his wallet. None of the defendants struck or threatened the plaintiff. Afterwards, Louis drove the plaintiff to pick up his car. The plaintiff took the Stradivarius violin and a statuette with him when he left Louis' house. He was partially disabled for two months as a result of the beating. He consulted a doctor concerning his injuries two weeks after the beating. He told the doctor that he had been injured in a fall. In 1958, he asked the doctor to change his records to show that the plaintiff had been assaulted. One of the $500 checks was cashed. The plaintiff stopped payment on the other on January 10, 1956. The finding does not recite the value of the two violins or the painting.

The claims of proof of the defendants are that the plaintiff brought the violins and the painting to Louis' house on November 3, 1955, by prearrangement. Under the plan, he was to turn them over to whoever was designated by Louis, in partial satisfaction of the indebtedness of approximately $60,000 owed by him to Louis for moneys which had been loaned to the plaintiff and Joseph at the request of the plaintiff and on his promise to repay the loans. The plaintiff's business dealings with Louis antedated 1955. In 1953, Louis gave the plaintiff a check for $700 and on other occasions loaned money to him and to Joseph. The loans totaled $60,000 and were all made on the promise of the plaintiff to vouch for, and to repay Louis for, all

moneys advanced to the plaintiff and Joseph for the deals in which they were engaged. On November 3, 1955, Richard picked up the plaintiff in New York City. In Stamford, the plaintiff, at his request, was dropped at his house to get blank bills of sale. He carried two double violin cases when he arrived at Louis' house. He executed bills of sale to Jean and to Mary Weisfeld for the Guarnerius and the Bergonzi violins and the painting. He made out and gave Louis a list of his violins and paintings and his valuations of them. He intended to sell other violins and paintings, and when he did he would be able to turn over more money to Louis. As Louis needed $1000 immediately, the plaintiff made out the two checks, one being postdated. The plaintiff was in Louis' house about one hour. Richard had left about three or four minutes after he and the plaintiff had arrived. When the plaintiff left, he took a statuette and a double violin case containing two violins with him. He had not been assaulted. There were no strangers in the house while he was there. Richard had made no arrangements to go to Greenwich with the plaintiff and knew nothing about the prospective buyer or his agent whom, according to the plaintiff's testimony, they were to meet there.

As has been indicated, the complaint is in two counts. The first count alleges the assault and battery by the defendants and the strangers. The second count alleges that the two violins, the painting, the two checks and the cash were obtained from the plaintiff "by the defendants and others in collusion with them, as a result of duress, assault and battery" on the plaintiff. In a more specific statement, the plaintiff elaborated on the allegations in the complaint by stating that the defendants assaulted him in a house on Riverbank Road in Stam-

ford, that the strangers took the violins, the painting and the cash from him at the instigation of the defendants and that the defendants compelled him to sign certain papers and a check. Although the complaint was set out in two counts, the second count was so pleaded that the conversion of the items described was not a separate and independent offense but was dependent on and accomplished by the assault and battery alleged in the first count. The court submitted four forms of verdict to the jury and instructed them that they could return a verdict for the plaintiff on both counts, or a verdict for the defendants, or a verdict for the plaintiff on the first count and for the defendants on the second count, or a verdict for the plaintiff on the second count and for the defendants on the first count. In excepting to the charge, counsel for the defendants called the court's attention to what he claimed was an inconsistency in the number and form of the verdicts submitted. This was sufficient to alert the court to possible error, even though it understood that the forms of verdict had been agreed upon by counsel. Under the facts which the plaintiff claimed to have proved, the conversion was accomplished by the beating administered to him by the three strangers and the threats of dire consequences if he did not do their bidding. Although the plaintiff set up two causes of action in separate counts, he predicated recovery for the conversion on the assault and battery. He did not plead nor attempt to prove a conversion separate and apart from the beating and threats. The occurrences were so closely related that the jury should have been instructed to disregard the form of pleading—in separate counts—and render a general verdict as though the issues had been framed in a single count. *Veits*

v. *Hartford,* 134 Conn. 428, 438, 58 A.2d 389. Therefore, the verdict for the defendants on the first count is inconsistent with the verdict for the plaintiff on the second count.

As noted, the plaintiff has not appealed. Ordinarily, in such a situation, he would be debarred from a retrial of the issues raised in the first count. The error in submitting the incorrect forms of verdict, however, affected both counts and requires a new trial in full. Maltbie, Conn. App. Proc. § 350.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.