GESSNER K. BENOIT *v.* AMALGAMATED LOCAL 299
UNITED ELECTRICAL RADIO AND MACHINE
WORKERS OF AMERICA ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued December 5, 1962—decided February 5, 1963

*Samuel Gruber,* for the appellants (named defendant et al.).

*Ronald J. Fracasse,* for the appellee (plaintiff).

ALCORN, J.   The plaintiff brought this action against the named defendant, an unincorporated labor organization hereinafter called the union, and five individuals who were the international organizer of the union, a member of its executive board, its business agent, its president and one of its members.   Nonsuits were entered in favor of the president of the union and the member of its executive board, and the plaintiff withdrew his action against the union's business agent.   The trial proceeded against the union, the defendant Harry Kaplan, who was the union's international organizer, and the defendant Primo Ciccolallo, who was a member of the union.   The complaint contained two counts, the first of which alleged in substance that, as a result of picketing incident to a strike, the plaintiff was wantonly and maliciously prevented from entering his employer's plant to work and was subjected to various wanton and malicious acts of assault and battery committed by the pickets, including Ciccolallo, acting under the direction, supervision and control of the union and the other individual defendants.   The second count merely incorporated the allegations of the first count and added three paragraphs evidently intended to allege a civil conspiracy.   Although the second count recites that the acts set forth in the first count were the result of an unlawful conspiracy, it fails to al-

lege the purpose or objective of the claimed conspiracy and consequently is a defective statement of a cause of an action for conspiracy. *Williams* v. *Maislen,* 116 Conn. 433, 437, 165 A. 455.

The court construed the first count as stating a cause of action against the union and the individual defendants for causing the plaintiff a loss of earnings by preventing his entrance into his employer's plant. It construed the second count as stating a cause of action for a conspiracy between the union and the individual defendants to prevent the plaintiff from entering his employer's plant and to commit the attack made by Ciccolallo. On this basis, the court rendered judgment solely against the union on the first count and awarded compensatory damages of $18 and punitive damages of $300; on the second count it rendered judgment solely against Ciccolallo and awarded compensatory damages of $1650 and punitive damages of $500. Both of these defendants have appealed.

The assignments of error attacking the finding are not pursued in the brief and are therefore treated as abandoned. *Salgreen Realty Co.* v. *Ives,* 149 Conn. 208, 211, 177 A.2d 673. The defendants claim that the plaintiff could not recover from the union because, as a member of a voluntary association, he had no common-law right of action against it; that § 52-76 of the General Statutes, which permits a voluntary association to be sued in its distinguishing name, creates no substantive right in the plaintiff; that the plaintiff has not satisfied the burden of proof required under § 31-114, relating to the liability of persons or organizations participating in a labor dispute; and that Ciccolallo could not be held liable under the second count because no conspiracy as claimed in that count was established

and because he had been absolved of liability under the first count.

The material facts as found by the court are as follows: The union was the collective bargaining agent for about 400 production and maintenance employees of the Whitney Blake Company. The plaintiff was a member of the union and a maintenance machinist employed by the company. On September 30, 1958, the union called a strike against the company as a result of a labor dispute over the terms and conditions of a new collective bargaining agreement between the union and the company. On October 1, 1958, the union established picket lines in front of entrances to the company's premises and maintained the lines until the middle of November. During this period, the union, through its agents, including Kaplan, its international organizer, maintained, controlled and supervised the pickets and picket lines. The plaintiff did not participate in the strike, and on October 1, 2 and 3 he reported for work and entered the plant through the employees' entrance. On the following Monday, October 6, he arrived at the plant for work and found between fifty and sixty pickets, including Kaplan and Ciccolallo, at the employees' entrance. When the plaintiff arrived, Kaplan threw himself against the pickets and mockingly shouted: "Let me in, I want to go to work." Unidentified pickets thereupon shouted the plaintiff's name and told him to go home. The picket line was moving in a compact circle. The plaintiff was unable to break through the line, and, when he attempted to enter the plant, Kaplan, Ciccolallo and the other pickets, standing row on row, blocked his entrance and pushed him back. After about three-quarters of an hour, the plaintiff abandoned his efforts to

enter and left to go to a nearby telephone. He was followed by Ciccolallo and about five other pickets who prevented him from using three public telephones. The plaintiff finally succeeded in making a telephone call at an automobile service station about two blocks from the plant and then started to return to his car. As he passed one of the telephone booths which the pickets had earlier prevented him from using, Ciccolallo came out of the booth, grabbed him, called him vile names, threatened him, threw him forcibly and violently against the wall of a nearby building, struck him and kicked him in the spine. The plaintiff did not go to work again until October 30 when, although prevented from entering the plant through the employees' entrance because of the picket line, he succeeded in gaining access through the office entrance by going around the picket line there.

The finding does not disclose the extent of the loss sustained by the plaintiff as a result of his being unable to enter his employer's plant for work on October 6. Nor does it set forth the nature of the injury sustained by the plaintiff as a result of the assault and battery committed by Ciccolallo. The extent of the finding is that the conduct of the picket line in front of the employees' entrance to the plant was a substantial factor in depriving the plaintiff of work in the plant on October 6 and that, since the conduct was wilful, he is entitled to punitive damages; and that Ciccolallo is liable to him "for damages sustained by reason of . . . [Ciccolallo's] assault." The appeal, however, raises no issue as to the amount of the damages awarded against either of the defendants, apart from the claim of the union that it was not liable for punitive damages.

We consider first the issues raised concerning the judgment against the union. At common law, a voluntary unincorporated association like this union could sue or be sued only in the names of its members. *United Mine Workers* v. *Coronado Coal Co.,* 259 U.S. 344, 385, 42 S. Ct. 570, 66 L. Ed. 975; note, 27 A.L.R. 786; see *Huth* v. *Humboldt Stamm,* 61 Conn. 227, 23 A. 1084. That disability was removed by statute in this state, however, in 1893. Chapter 32 of the 1893 Public Acts, the progenitor of § 52-76 of the General Statutes, allowed such an association to sue or be sued in its distinguishing name. The statute, however, is procedural and creates no substantive right, so that resort must be had to extraneous circumstances to determine in a given case whether a right of action against the association exists on behalf of one of its members. In the field of torts, the fundamental concept of a voluntary unincorporated association has, in general, militated against the liability of the association to one of its members on the ground of negligence. *De Villars* v. *Hessler,* 363 Pa. 498, 500, 70 A.2d 333; note, 14 A.L.R.2d 473. At least one jurisdiction has, however, allowed such an action. *Marshall* v. *International Longshoremen's & Warehousemen's Union,* 57 Cal. 2d 781, 787, 371 P.2d 987. On the other hand, the reasons for denying a cause of action in negligence have not been found to exist in the field of intentional torts, and consequently a member of a labor union organized as a voluntary unincorporated association has been held to have a right of action against the union for such intentional acts as wrongful expulsion; *International Assn. of Machinists* v. *Gonzales,* 356 U.S. 617, 78 S. Ct. 923, 2 L. Ed. 2d 1018, rehearing denied, 357 U.S. 944, 78 S. Ct. 1379, 2 L. Ed. 2d 1559; assault

and battery; *Inglis* v. *Operating Engineers Local Union No. 12*, 18 Cal. Rptr. 187, aff'd, 58 Cal. 2d 272, 373 P.2d 467; and wrongful deprivation of the right to work. *United Assn. of Journeymen* v. *Borden*, 160 Tex. 203, 328 S.W.2d 739.

Since, however, the acts of which the plaintiff complains occurred in the course of a labor dispute, it is necessary for us to determine the effect of § 31-114 of the General Statutes in deciding whether the plaintiff has a substantive right of action which he can enforce against the union. Section 31-114 provides: "No officer or member of any association or organization, and no association or organization participating or interested in a labor dispute, shall be held responsible or liable in any court for the unlawful acts of individual officers, members or agents, except upon proof of actual participation in, or actual authorization of, such acts, or ratification of such acts after actual knowledge thereof." We have not heretofore been called on to apply the language of § 31-114 in circumstances such as the present. Under the statute, liability could not be imposed on the union for the unlawful acts of its individual officers, members or agents except on proof of (1) actual participation in, (2) actual authorization of, or (3) ratification of those acts by the union. The union could act only through the instrumentality of individuals. The court, in its judgment, absolved Kaplan and Ciccolallo, the only individual defendants remaining before it, from any liability for their actions in the picket line, and based the union's liability for what occurred solely on the grounds of authorization and ratification. The element of participation by the union in any activity at the gate is, therefore, not involved in the case before us.

Because of its similarity to the Norris-LaGuardia Act (47 Stat. 70, 29 U.S.C. §§ 101-115), we have referred to chapter 562 of the General Statutes (formerly Rev. 1949, c. 372), of which § 31-114 forms a part, as our "Little Norris-LaGuardia Act." *Devine Bros., Inc.* v. *International Brotherhood*, 145 Conn. 77, 80, 139 A.2d 60; see also *H. O. Canfield Co.* v. *United Construction Workers*, 134 Conn. 358, 360, 57 A.2d 624. In fact, § 31-114 is substantially similar to § 6 of the Norris-LaGuardia Act. Consequently, the construction placed on the latter act by the Supreme Court of the United States is particularly pertinent to our present inquiry. That court has said: "We hold, therefore, that 'authorization' as used in § 6 [of the Norris-LaGuardia Act] means something different from corporate criminal responsibility for the acts of officers and agents in the course or scope of employment. We are of the opinion that the requirement of 'authorization' restricts the responsibility or liability in labor disputes of employer or employee associations, organizations or their members for unlawful acts of the officers or members of those associations or organizations, although such officers or members are acting within the scope of their general authority as such officers or members, to those associations, organizations or their officers or members who actually participate in the unlawful acts, except upon clear proof that the particular act charged, or acts generally of that type and quality, had been expressly authorized, or necessarily followed from a granted authority, by the association or non-participating member sought to be charged or was subsequently ratified by such association, organization or member after actual knowledge of its occurrence." *United Brotherhood*

*of Carpenters & Joiners* v. *United States,* 330 U.S. 395, 406, 67 S. Ct. 775, 91 L. Ed. 973. Because of the substantial identity of the language in the Norris-LaGuardia Act with that in § 31-114, we consider the construction thus given to the former to be equally applicable to the latter. What then is the result if we apply that construction to the facts found by the court in the present case?

There is no finding that the union either authorized in advance or subsequently ratified the prevention of the plaintiff's entrance into his place of employment. The court's finding with respect to union action is that the union called a strike against the plaintiff's employer and established a picket line in front of the employer's plant. Both of these actions were lawful, since resort to a strike is a legitimate activity in a labor dispute, and, in connection with a legitimate labor dispute between employers and employees, lawful picketing is a proper activity. *E. M. Loew's Enterprises, Inc.* v. *International Alliance,* 127 Conn. 415, 421, 17 A.2d 525; Restatement, 4 Torts §§ 779, 797. We must assume, in the absence of any finding to the contrary, that the union, in calling a strike and establishing a picket line, contemplated a lawful activity and peaceful picketing. The remaining findings of the court concerning the activities at the picket line relate exclusively to the actions of individual pickets, some unidentified, but including Kaplan and Ciccolallo. We conclude that the authorization by the union of lawful picketing was insufficient, under the statute, to render it liable for the results of unlawful acts resorted to by individual pickets in the heat of the moment. Likewise, it cannot properly be said that individual pickets who held official positions with the union could, by the commission of

illegal acts, commit the union to a ratification of those acts. It is our conclusion that under the facts as found by the court liability cannot be imposed on the union for preventing the plaintiff's access to his employer's plant.

We turn then to the facts involving Ciccolallo. Undeniably, the facts found as to this defendant's conduct toward the plaintiff, following the plaintiff's telephone call, amounted not only to an assault but to a battery. No issue is made of this distinction by the defendants. Their claim is that Ciccolallo could not be held liable under the second count because no conspiracy was proved and because he had been absolved under the first count. Obviously, no conspiracy was proved because, as already indicated, none was even properly alleged. One of the elements of a conspiracy is a combination to do a criminal or unlawful act or a lawful act by criminal or unlawful means. *Williams* v. *Maislen*, 116 Conn. 433, 437, 165 A. 455. The lack of an allegation of any such combination left this complaint, though phrased in two counts, as if it were in a single count, since the allegations in the second count amounted to no more than a repetition of the first. The cause of action stated against all the defendants could and should have been stated in a single count. *Veits* v. *Hartford*, 134 Conn. 428, 438, 58 A.2d 389. This is particularly so since, accurately speaking, there is no such thing as a civil action for conspiracy but rather an action for damages caused by acts committed pursuant to a formed conspiracy. *Cole* v. *Associated Construction Co.*, 141 Conn. 49, 54, 103 A.2d 529. The acts done by Ciccolallo, rather than the imperfectly alleged conspiracy, are the basis of the plaintiff's claim against him. In view of the form which the allegations of the two counts

took, the court was confronted with a situation in which only a single count was actually involved. *Fine* v. *Fine,* 149 Conn. 251, 256, 178 A.2d 534. Facts which are alleged in any part of the pleadings and are proved are a sufficient basis for a judgment for one party or the other. *Ohlin* v. *Kowner,* 96 Conn. 394, 400, 114 A. 117. Judgment may be rendered for the relief demanded on any right of action which the facts alleged in the complaint are sufficient in law to support. *Makusevich* v. *Gotta,* 107 Conn. 207, 209, 139 A. 780; *Cole* v. *Jerman,* 77 Conn. 374, 383, 59 A. 425. Furthermore, the judgment must follow the proof of the facts alleged, whatever view the court may take of the classification of the cause of action. *Metropolis Mfg. Co.* v. *Lynch,* 68 Conn. 459, 470, 36 A. 832. Consequently, the judgment rendered against Ciccolallo was correct, and it is immaterial that the court, in the construction which it placed on this complaint, based the judgment on the allegations of the so-called second count.

There is error only as to the judgment against the defendant Amalgamated Local 299 United Electrical Radio and Machine Workers of America, the judgment as to it only is set aside, and as to it the case is remanded with direction to render judgment in its favor.

In this opinion the other judges concurred.