Cecil A. PARKS, Plaintiff,

v.

**BALDWIN PIANO AND ORGAN COMPANY, and Albert McConnell, Defendants.**

Civ. No. 10408.

United States District Court
D. Connecticut.

Jan. 9, 1967.

Alfonse C. Fasano, New Haven, Conn., for plaintiff.

Robert B. Snow, Jr., of Wiggin & Dana, New Haven, Conn., and J. Leland Brewster, II, of Kyte, Conlan, Wulsin & Vogeler, Cincinnati, Ohio, for defendant Baldwin Piano & Organ Company.

Richard L. Hershatter, New Haven, Conn., for defendant Albert McConnell.

TIMBERS, Chief Judge.

### QUESTIONS PRESENTED

The essential questions presented by defendants' motions for summary judgment, pursuant to Rule 56, Fed.R.Civ. P., in this diversity action for breach of a piano dealer's franchise contract, are whether the contract which was terminable at will was an enforceable agreement and, if so, whether termination and repossession of certain consigned goods were carried out in accordance with the contract.

The Court holds that the corporate defendant as a matter of law was entitled to terminate the contract upon the notice it gave and that the consigned goods were repossessed in accordance with the contract. There being no genuine issue as to any material fact and defendants being entitled to judgment as a matter of law, defendants' motions for summary judgment are granted.

### FACTS

The facts necessary to a determination of the instant motions are not in dispute.

██ Plaintiff is a Connecticut citizen. Defendant Albert McConnell (hereinafter "McConnell") is a New York citizen. Defendant Baldwin Piano and Organ Company (hereinafter "Baldwin"), being an Ohio corporation and having its principal place of business in Ohio, is an Ohio citizen.[1] The amount in controversy exceeds $10,000, exclusive of interest and costs. The action, commenced in the Superior Court for New Haven County, being one of which the district courts of the United States have original jurisdiction (28 U.S.C. § 1332(a) (1) and (c)), was properly removed by defendants to this Court (28 U.S.C. § 1441(a)).

Baldwin is a manufacturer of musical instruments with headquarters in Cincinnati, Ohio. Its marketing operations are carried on by means of consignment agreements with individual dealers in specified areas around the country.

Under such a consignment agreement, plaintiff was the Baldwin dealer in Springfield, Massachusetts, from May 15, 1955, to June 30, 1960, having replaced a dealer who retired.

Upon being informed that the existing dealership in New Haven, Connecticut, was to be terminated, and having been offered that area franchise, plaintiff entered into a new agreement with Baldwin on August 2, 1960; this agreement—the one here in suit—was a written one, signed by the respective parties, and in substantially the same form as the earlier Springfield agreement.

Under the August 2, 1960 agreement with Baldwin, plaintiff carried on business in New Haven as a Baldwin dealer from August 15, 1960, until late in January of 1964, ordering and receiving shipments of instruments from Baldwin and selling those instruments on Baldwin's behalf.

On January 22, 1964, Borg, as Baldwin's representative and authorized agent, informed plaintiff that all Baldwin merchandise then held on consignment by plaintiff was to be retaken by the company the following morning.

---

1. The action against a third defendant, H. William Borg (hereinafter "Borg"), an employee of Baldwin, was dismissed for lack of jurisdiction over the person on June 1, 1964, by the Hon. Robert P. Anderson, then United States District Judge.

Plaintiff alleges that Borg then told him that Baldwin was terminating the dealership arrangement.[2] On January 23 removal of the consignment stock was effected in the presence of plaintiff and without resistance from plaintiff. On January 25 written notice of termination of the arrangement between plaintiff and Baldwin was delivered to plaintiff.

McConnell, who operated a Baldwin dealership in Poughkeepsie, New York, from January of 1959 until July 31, 1964, succeeded to the New Haven dealership and opened for business in New Haven on February 1, 1964.

Plaintiff's complaint, dated March 30, 1964, contains a multiplicity of loosely-drawn allegations; but the essential claim therein disclosed is that, in furtherance of an alleged civil conspiracy with McConnell wrongfully to terminate plaintiff's franchise and to replace plaintiff with McConnell as the company's area dealer, Baldwin breached its dealer's contract with plaintiff by improper termination of the franchise and wrongfully repossessed certain goods which had been delivered by Baldwin to plaintiff.

Defendants contend in the instant motions that under controlling state law the purported contract underlying the dispute was unenforceable for lack of mutuality of obligation; but that even if the contract were binding, termination and repossession were carried out in accordance with the contract provisions. Defendants urge, therefore, that no breach was committed and no action can be maintained for a conspiracy to breach.

## CONSTRUCTION OF THE CONTRACT

The purported contract between plaintiff and Baldwin expressly states that it "contains all the covenants and agreements of the parties hereto, and shall not be altered, amended or modified without the written consent of both parties."[3] In examining whatever right-duty relationship may have been created by execution of the contract, this Court is confined to an analysis of the terms of that document, since

"(t)he agreement of parties to a written contract is to be ascertained from the language of the instrument, and there can be no intendment or implication inconsistent with the express terms thereof."[4]

The written agreement upon which this action is founded is a consignment arrangement which governs the conduct of the parties in the course of any dealings they may have if and when the consignor ships musical instruments to the consignee. Either party may terminate the arrangement at any time by written notice to the other.[5] The consignor has no obligation to supply any goods at all.[6] If goods are supplied, title remains in the consignor,[7] who may demand return of any or all of the goods at any time;[8] the consignee also has the right to return any or all of the goods at any time.[9]

This is not a contract "instinct with obligation even though imperfectly expressed."[10] It is an arrangement indefinite in the extreme, imposing no executory obligation on the manufacturer;

2. Complaint, ¶ 18.

3. Exhibit A to Complaint, ¶ XIX.

4. Blosser v. Enderlin, 113 Ohio St. 121, 148 N.E. 393 (1925).
   In this diversity action, Connecticut's rules of sustantive law will be applied. See Guaranty Trust Co. of New York v. York, 326 U.S. 99 (1945). The agreement here involved contains a provision that it is to be construed and performed in accordance with the laws of Ohio, no matter where executed. Exhibit A to Complaint, ¶ XVIII. Given such a provision, the Connecticut rule requires determination of contract questions in accordance with Ohio law. See Pollak v. Danbury Mfg. Co., 103 Conn. 553, 557, 131 A. 426 (1925).

5. Exhibit A to Complaint, ¶ XVIII.

6. Exhibit A to Complaint, ¶ XVII.

7. Exhibit A to Complaint, ¶ I.

8. Exhibit A to Complaint, ¶ XII.

9. Exhibit A to Complaint, ¶ XII.

10. Bach v. Friden Calculating Machine Co., 155 F.2d 361, 365 (6 Cir. 1946).

absent that, the lack of express consideration is not surprising. Such an indefinite agreement, devoid of the fundamental requisite of mutuality of obligation, is not enforceable against ·Baldwin and does not constitute a binding contract for breach of which an action for damages may be maintained.[11]

At most, the terms of this purported contract were binding only as to deliveries actually made under it.[12] Plaintiff has not alleged any breach in that respect. Even if an implied executory obligation could be read into the arrangement, the relationship was terminable at will by either party on written notice to the other.[13] Baldwin exercised its power of cancellation by delivery of written notice to plaintiff. Whatever agreement may have existed was thereby dissolved in accordance with its own terms without liability to defendant.[14]

Similarly, no impropriety has been established in the manner by which Baldwin retook its own goods without resistance from plaintiff consignee. Indeed, by the terms of the consignment agreement, Baldwin could have demanded that plaintiff pack and ship all the consignment stock to Cincinnati at his own expense.[15] Plaintiff cannot be heard to complain of Baldwin's failure to exact its due in full. Further, in the context of any possible civil wrong sounding in tort, it seems clear that Baldwin was fully within its rights in repossessing its goods without the assistance of formal legal process, since there was no danger of a breach of the peace.[16]

Finally, in the view this Court takes of the purported contract between plaintiff and Baldwin, no civil action for conspiracy can be maintained. Such an action is in reality one for damages caused by wrongful acts committed pursuant to a conspiracy, rather than by the conspiracy itself.[17] Since the acts complained of by plaintiff involved no legal impropriety on the part of defendants, there is no legal injury.[18]

Plaintiff, an experienced distributor of Baldwin products, freely entered into a consignment arrangement with Baldwin which was expressly terminable at will, and which imposed no obligation upon Baldwin to supply any goods. Plaintiff may have hoped to establish such a thriving business that the relationship would be continued, but mere disappointment in his expectations does not permit the Court to make a new contract for the parties or to insert protective conditions which the parties failed to provide for themselves.[19]

11. See General Motors Corp. v. Keener Motors, 194 F.2d 669, 677 (6 Cir. 1952); Ford Motor Co. v. Kirkmyer Motor Co., 65 F.2d 1001, 1006 (4 Cir. 1933); Curtiss Candy Co. v. Silberman, 45 F.2d 451, 452 (6 Cir. 1930).

12. See Ford Motor Co. v. Kirkmyer Motor Co., supra at 1005; Curtiss Candy Co. v. Silberman, supra.

13. Exhibit A to Complaint, ¶ XVIII.

14. Green Bay Auto Distributors v. Willys-Overland Motors, 102 F.Supp. 151, 160–161 (N.D. Ohio 1951), aff'd per curiam, 202 F.2d 151 (6 Cir. 1953).

15. Exhibit A to Complaint, ¶ XII.

16. See Conn.Gen.Stat. §§ 42–98 and 42a–9–503 (1958), dealing with such rights in lien holders. The mere lien holder having such rights, it is only reasonable to view such rights as inherent in the unqualified owner. Cf. Holly v. Brown, 14 Conn. 255, 260 (1841). Connecticut law controls this question of liability in tort. See Bissonnette v. Bissonnette, 145 Conn. 733, 734, 142 A.2d 527 (1958).

17. Benoit v. Amalgamated Local 299, 150 Conn. 266, 276, 188 A.2d 499 (1963); Cole v. Associated Construction Co., 141 Conn. 49, 54, 103 A.2d 529, 40 A.L.R.2d 1105 (1954); Austin v. Barrows, 41 Conn. 287, 300 (1874). Connecticut law governs. See Bissonnette v. Bissonnette, supra.

18. The actionable wrong of unjustifiable interference with trade or business involves interference *by unlawful means.* See Skene v. Carayanis, 103 Conn. 708, 714, 131 A. 497 (1926).

19. See Motor Car Supply Co. v. General Household Utilities Co., 80 F.2d 167, 171 (4 Cir. 1935); Ford Motor Co. v. Kirkmyer Motor Co., supra at 1006; cf. Consolidated Jewelers, Inc. v. Standard Financial Corp., 325 F.2d 31, 35 (6 Cir. 1963).

The Court may not relieve a party competent to contract from an improvident agreement.[20]

## CONCLUSION

Defendants' motions for summary judgment, pursuant to Rule 56, Fed.R. Civ.P., are granted, there being no genuine issue as to any material fact and defendants being entitled to judgment as a matter of law.

20. Ullman v. May, 147 Ohio St. 468, 72 N.E.2d 63 (1947); see also Hogan v. Wright, 356 F.2d 595, 598 (6 Cir. 1966). And although any inferences are to be viewed in the light most favorable to the party opposing the instant motions, United States v. Diebold, Inc., 369 U.S. 654, 655 (1962), this Court is of the opinion that an assessment of the underlying proof shows the issues here presented clearly establish no genuine need for trial. See Dressler v. M V Sandpiper, 331 F. 2d 130, 131–132 (2 Cir. 1964).