[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff has brought suit against the Connecticut Education Association, (CEA) the Town of Stratford (Town) and the Stratford Board of Education (Board). The plaintiff who formerly was a teacher, employed by the Board, appears pro se and alleges in eight counts in her last amended complaint as follows. That she is a physically handicapped person, who was employed by the Town through its Board from September 1957 until June 22, 1982; that she was suspended as a teacher by the Board on January 30, 1981; that in October 1981 she requested CEA to provide aid; that Cashavelly the school principal acted in a negative fashion to her and he became increasingly negative and uncooperative to her; that at the Board meeting on January 30, 1981 she was not present "when the board terminated her contract contrary to 1-21 and 1-21k(a) of the Freedom of Information Act; that from January 31, 1981 forward she made effort to discover and resolve their differences; that the plaintiff was subjected to public criticism by the agents, servants and employees of the Town and Board, that in 1981 the plaintiff was employed by the Town and Board as a book sorter without job specifications; that the CEA did not monitor the terms of an agreement signed by Wallace, or aid her on her complaints of libel; that CEA actions were not part of the process the CT Page 8819 plaintiff believed they supplied and which were described in its handbook and its newsletter; that her complaint filed with the Connecticut Commission on Human Rights and Opportunities has not been processed. Count two alleges breach of contract pursuant to 10-150 thru 10-153a et seq. C.G.S. and the agreement between the Board and the Stratford Education Association (SEA). Count three alleges denial of due process in violation of the14th Amendment of the United States Constitution and Section 8 Article 1 of the Connecticut Constitution in that she was denied her right to be heard, to be informed of the nature and cause of the accusations against her and her right to confront witnesses against her. Count four alleges discrimination of her under the Connecticut Fair Employment Act 46b-51 et seq. in that she was suspended contrary to her protection under the Freedom of Laws; that she is physically handicapped under 503 and 504 of the Rehabilitation Act of 1973 and 10-150, 151 C.G.S. and Title VII; that the CEA discriminated against her by giving full protection to a non-handicapped teacher in 1988 while denying her the same protection in 1981. Count five alleges that the CEA, the Town and the Board failed to evaluate all practices and policies and their effects; and failed to make available to the handicapped an opportunity for input as per 504 of the Rehabilitation Act of 1973. Count six alleges that the Town, Board and CEA conspired to create an intimidating atmosphere; that CEA abandoned her; negative news releases appeared, that the defendants took no steps to resolve her suspension, that she was threatened with loss of her pension rights by a CEA representative and the superintendent of schools and they misinformed her of her pension rights; that the defendants misinformation about and threats of loss of pension rights forced her to sign an unconscionable release agreement, which agreement was used maliciously and publicly to demean her. Although the original complaint contains a count seven, no such count appears in the last amended complaint. Count eight alleges unresponsiveness of the defendants to the plaintiff in that they accorded her no protection under 10-150, 151 et seq. C.G.S., the Fair Employment Practices 46a-51 et seq., 503 and 504 of the Rehabilitation Act of 1973 Title VII and pertaining contract and libel laws, which constituted discrimination. Count nine alleges that the actions of the defendants caused her enormous detriment in the form of loss of wages, income, and retirement benefits, loss of standing reputation, rights of privacy, emotional stress and humiliation. She claims 1) reinstatement in her position as a teacher; 2) compensatory damages, 3) punitive or exemplary damages, 4) costs; 5) 1 attorney's fees and 6) such other relief as in law or equity may appertain. The CEA's answer amounts to a general denial of all the allegations of the complaint and by way of special defense alleges all the plaintiffs claims are barred by the applicable statutes of limitations. The Town's answer amounts to a denial CT Page 8820 of all the allegations of the complaint and by way of special defenses sets up the statutes of limitations and alleges an agreement between the Board and the plaintiff in full satisfaction of all claims and damages. The Board's answer also generally denies the allegations of the complaint and by way of Special Defenses alleges the statutes of limitations; that all her rights and liabilities were adjudicated in a judgment in prior actions and therefore her claims are barred by res ad judicata, collateral estoppel and by the prior pending action doctrine in the cases of Marion Wallace v. Town of Stratford Board of Education, et al, No. CV84 0217922S; Marion Wallace v. Connecticut Commission on Human Rights and Opportunities, No. CV88 0249572S and Marion Wallace v. Town of Stratford Board of Education Federal Court No B-84-658 (TFGD).
The facts are found as follows, after six full days of trial. The plaintiff was employed for twenty-four years as a teacher by the Board and was tenured. She was forty-five years old at the time she received notice of her suspension. On January 28, 1981 the Board advised her that pursuant to Section 10-151 (b) C.G.S. that Superintendent Ohla intended to recommend at a Board special meeting on January 30, 1981 the termination of her contract of employment. That letter advised her of her right to appear with her counsel. By letter dated January 30, 1981 the Board notified her that it voted to consider the termination of her contract of employment, that further proceedings would be in accordance with 10-151 (b) C.G.S. and that she was suspended immediately with pay. While the plaintiff continually claims that she was terminated, the fact is that she was only suspended in January 1981. By letter dated February 13, 1981 William J. Dolan, her attorney, provided by the CEA, the plaintiff's union requested a hearing pursuant to10-151 before an impartial panel concerning the possible termination. On February 6, 1981 the Board in an answer to the plaintiff's letter of February 2, 1981 at the plaintiff's request stated the reasons for termination were inefficiency, incompetence and more specifically it stated in general terms four other reasons. Thereafter the Board and the plaintiff and her attorney carried on a series of negotiations which culminated in an agreement signed by the plaintiff on May 29, 1981 and by the Board on June 9, 1981, which provided for the plaintiff to work in a professional capacity during the 1981-1982 school year, that she would use her accumulated sick leave by going on paid sick leave so that that benefit would be, used up by the end of the 1981-1982 school year; that the plaintiff would resign effective at the end of the 1981-1982 school year: that the plaintiff would be issued a letter of recommendation by her administrative representative of the Board; that the Board would rescind its vote to consider termination and the plaintiff would withdraw her application for CT Page 8821 a hearing; and finally that her personnel file would be purged of any adverse materials. The plaintiff's attorney by letter dated May 21, 1981 advised her of the details of the agreement and that she would continue to be a fully paid Board employee for the 1981-1982 school year, however, she would not be assigned to a classroom but would have another assignment "such as one in the media center" and that she would go on paid sick leave probably in February or at some time which would use up her accumulated sick leave. That letter also advised her that her impartial panel hearing was scheduled for June 16, 1981 and of a prehearing conference with the panel, and both attorneys. The one year employment included in the agreement gave the plaintiff twenty-five years of employment which qualified her for full pension rights which were greater than she would have had, had her contract been terminated at the end of her twenty-fourth year. She in fact submitted her letter of resignation dated June 15, 1981 to be effective at the end of the school year 1982. She was assigned a professional position which consisted of examining publishers materials to determine if they met the defined program objectives of the teachers committees in language and arts. She examined all the texts and materials of publishers and presented the results of her work to the committee. The plaintiff's work was an integral part of the selection of the publishers to be used. It was not a book sorters job as she describes it. The work was done at a school where the materials were located and which was used for administrative purposes by the Board. She had no classes as she had been previously advised. It is clear that she was working in an administrative capacity. In response to the plaintiff's letter dated April 20, 1982 to the CEA asking for help in rescinding the signed agreement, the CEA answered that they were under no obligation to provide further legal representation.
Her original problems began in the summer of 1980 when she found that she was unassigned to a classroom and the superintendent asked her to choose one of six schools and she selected Center School sixth grade although she had been teaching second and third grade. She complained that the class was poor in quality and that her money was stolen by a pupil who didn't live in the district. That pupil became the focal point of her complaints. The Board's right to suspend immediately, as it did, in its letter of January 30, 1981 is governed by10-151 (d) which provides that immediate suspension may occur when serious misconduct is charged. The Board's letter of February 6, 1981 set forth inefficiency, incompetence; failure to exhibit the necessary personal teacher qualifications; failure to meet required instructional responsibilities; failure to carry out responsibilities in respect to her human relationships, with staff, pupils and parents; and failure to meet professional responsibilities. The plaintiff's claims CT Page 8822 about failure to demonstrate serious misconduct is without basis in fact. The charges made in the aforementioned letter, constitute serious misconduct which is any improper or wrong conduct the nature of which is greater than ordinary misconduct. The charges made by the Board in their letter constituted serious misconduct. See Cope v. Board of Education, 4 Conn. App. 464,466. Her physical problems played no part in the Board's judgment of her classroom conduct. In addition the plaintiff's acceptance of a settlement evidenced by the agreement of May 29, 1981 to be hereinafter discussed makes futile this claim of error. The plaintiff subsequently filed an action in this court CV84 0217922S in which she sued the Town of Stratford, Board of Education, John Ohla Superintendent of Schools, William J. Carroll and James T. Cashavelly principal. She subsequently appealed the decision of the Connecticut Commission on Human Rights who had ruled against her administrative complaint against the Town and the Board. That appeal was dismissed because of lack of subject matter jurisdiction. On October 9, 1984 she brought suit against the Town Board in the United States District Court claiming sexual discrimination, discrimination against a handicapped person, violation of her due process rights, violation of her rights under Section 504 of the Rehabilitation Act of 1973 and a failure to grant her her rights under 10-151 C.G.S., et seq.; interference with her rights of free speech; violation of the agreement between herself and the Board, failure to supervise the Board's employees and a violation of her rights as a physically disabled person 46b-61 C.G.S. That action was dismissed as not having been brought within the requisite period of the Statute of Limitations as to all federal claims, and the three counts not within the federal jurisdiction but within the state jurisdiction were also dismissed because of the dismissal of the federal counts.
 I
The instant action was begun against the Town and Board on May 12, 1988 and against the CEA on May 20, 1988 by service of process. The first issue is whether the Town is properly a party to this action on the plaintiff's claim that the Board is an agency of the Town. "The authority of local boards of education derives from their role as agents of the state. [T]he furnishing of education for the general public required by article eighth 1 of the Connecticut Constitution is by its very nature a state function and duty (Footnote omitted) Murphy v. Board of Education, 167 Conn. 368, 372. . . . this responsibility has been delegated to local boards which are agencies of the state in charge of education in the town . . . possess only such powers as are granted to them by the General Statutes, expressly or by necessary implication . . ." Campbell v. Board of Education, CT Page 8823193 Conn. 93, 96. Under 10-220 C.G.S. entitled "Duties of boards of education" each local board of education is given authority by state statute to employ and dismiss the teachers of schools of such district subject to the provisions of sections10-151, and 10-158a. It follows that in hiring and firing of teachers the Board acts in its capacity as an agent of the state and not of the Town and the Town is not legally responsible for those duties of the Board. The Board is not the Town's agent and the formers actions herein cannot bind the latter in any degree, and it bears no responsibility for the Board's actions.
 II
With respect to the two remaining defendants the Board and CEA, the first count alleges all of the facts that have transpired since her transfer to Center School in 1981 to the date of the complaint but makes no claim for relief. Her post trial brief refers in this count only to CEA and its refusal to help her process her complaint to the Commission on Human Rights and Opportunities. She does make a statement in that count to being a handicapped person and that issue should now be decided. The plaintiff makes a claim under Section 504 of the Rehabilitation Act of 1973 which reads as follows. "No otherwise qualified handicapped individual in the United States as defined in Section 7(6) shall solely by reason of his handicap be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal Financial Assistance." Section I 7(6) reads "the term `handicapped individual' means any individual who (A) has a physical or mental disability which for such individual constitutes or results in a substantial handicap to employment and (B) can reasonably be expected to benefit in terms of employability from vocation rehabilitation services provided pursuant to Titles I and III of this Act." This definition was subsequently changed to "Handicapped person means any person who has a physical or mental impairment that substantially limits one or more major life activities, has a record of such an impairment or is regarded as having such an impairment." The plaintiff does have some physical problems resulting from a childhood disease, polio. The use of the right arm and hand is limited in a small degree as is one leg and foot also in a small degree. However those limitations do not result in a handicap in her employment. In fact she was employed for twenty-four years in her position with the defendant Board as a teacher and for twenty-three years she filled that position capably. In the twenty-fourth year her performance became unsatisfactory to the defendant Board which resulted in her suspension. The Board did employ her by agreement for a twenty-fifth year although not as a teacher in a classroom with pupils. In addition she has been gainfully employed as a CT Page 8824 computer operator since September 1987 which indicates that her; physical handicap does not affect her employability. The plaintiff fails to qualify under 7(6) as amended as a handicapped person. 504 contains a requirement that the discrimination occur under any program or activity receiving Federal Financial Assistance. There is no evidence that the I Board, the Town or CEA was receiving federal assistance in any of the programs and activities involved in this case, and so even if she qualified as a handicapped person she would not be eligible for the benefits of the Rehabilitation Act of 1973. Rogers v. Frito-Lay, Inc., 433 F. Sup. 200, 204; Bachman v. American Society of Chemical Pathologists, 577 F. Sup. 1257. Section 46a-51 (15) reads as follows: "Physically disabled' refers to any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or change, or from illness, including but not limited to epilepsy, deafness or hearing impairment or reliance on a wheel chair or other remedial appliance or device." The plaintiff has none of the specified conditions delineated in that statute, but she does have the physical infirmities hereinbefore stated, however, as has been previously stated those conditions did not prevent her from performing her duties as a teacher for almost all of the first twenty-four years of her employment. It is evident that her infirmities do not result in a substantial limitation of one or more of her major life activities. Americans with Disabilities Act of 1990 560 pg. 12.
A significant element of the plaintiff's case is to determine that in fact she was discriminated against as a result of her handicap. Had she been able to prove that she was handicapped or disabled, she still has not been able to demonstrate that she was in fact discriminated against by reason of her handicap or disability. The facts are that the procedure required by 10-151 et. seq. C.G.S. was followed by the Board in every detail including the scheduling of the hearing on her retirement. The evidence produced in court amply demonstrates that she did not qualify to continue teaching. In spite of the school regulations she spent most of the class time lecturing rather than conducting the classes so that the pupils participated; her classroom was in disarray with desks facing in all directions; the pupils were constantly talking to one another, and bad language about the plaintiff was heard by the supervisor present in class; she constantly talked down to the children; did not adequately cover the reading; there were gaps in the curriculum and it became obvious she would not complete the assigned yearly curriculum, and discipline was absent in her classroom. Discussions with the plaintiff by her supervisors about these problems did not result in changes or improvements and there were numerous constant complaints about the plaintiff CT Page 8825 by parents. In the assistant superintendents opinion she was not an effective teacher. Each teacher is required to submit her goals for the year at the beginning of the school year however the plaintiff did not submit hers although her principal requested them a number of times. The Board required a weekly plan of lessons procedures and materials which she had difficulty following and the principal could not get her to submit her plan book in which the aforementioned items were outlined. She felt that because of her experience, she did not have to plan. She would not cooperate on the "Time on Task" study, an important component of teaching to determine what the student gets out of studying. Discipline in her classroom was a real problem and she daily sent pupils to the principal's office or to the learning center in spite of instructions not to do so The pupils threw things and spoke to one another creating a chaotic atmosphere. Previous teachers of the same class had no such trouble with them. In spite of the principal's discussion with her about the classroom discipline and his suggestions the discipline deteriorated further resulting in confrontation between the teacher and the pupils. The classroom had a warlike atmosphere and there was no rapport between the teacher and pupils. The school regularly received complaints from parents of the plaintiff's verbal abuse, a negative attitude to the students, evasiveness, lack of papers being brought home, homework not related to school work, that the learning environment was bad and that the youngsters did not want to go to school. She did not respond positively to the principals suggestions and criticism and battled him in every instance and he found nothing positive in her teaching performance. On occasions she had to summon the principal to her classroom because of the lack of discipline. She had no patience, no acceptance of the students as they are and therefore to help them cure their problems, empathy for them or interest in them all of which a teacher should possess. Her "Teacher Evaluation Form" for December 9, 1980 shows twenty-one "Needs Improvement" in the twenty-one categories listed, only one "Commendable" and no "Effectives". During all of her meetings and discussions with the principal she never raised the issue of her handicap or disability. It is patently evident that the Board had evidence of serious misconduct on the plaintiff's part so as to be able to suspend her on January 30th as it did by letter of that date. The record is replete with the plaintiff's continued neglect of her teaching duties and responsibilities despite repeated warnings and admonitions beginning in September 1981 and continuing for months. Cope v. Board of Education, 4 Conn. App. 464,466 the nature of her conduct was sufficient to characterize it as serious as distinguished from trivial or ordinary.
With respect to the agreement between the Board and the CT Page 8826 plaintiff dated May 29, 1981, this court finds that an accord and satisfaction occurred. "An accord is a contract between creditor and debtor for the settlement of a claim by some performance other than that which is due. Satisfaction takes place when the accord is executed. W.H. McCune v. Revzon,151 Conn. 107, 109." The defense of accord and satisfaction requires the defendant to allege and prove a new contract based upon a new consideration which must be offered by the debtor and accepted by the creditor with intent to satisfy the whole claim and that such will be the effect of its acceptance must be made known to the creditor in some unmistakable manner so that he is found to understand that if he takes it he takes it in full satisfaction of his claim." Crucible Steel Co. v. Premier Mfg. Co., 94 Conn. 652, 656. See Blake v. Blake, 211 Conn. 485, 491; County Fire Door Corp. v. C.T. Wording Co., 202 Conn. 277, 282. In the instant case the plaintiff with the aid of her attorney worked out a contract of settlement which constituted an accord. Her previous contract which renewed itself from year to year until her retirement was changed to a one year contract in a professional capacity, in return for her resignation at the end of that year, her twenty-fifth year of service. The evidence shows that, the accord was worked out by the plaintiff and her attorney, that she executed it, and that she understood completely all the provisions of that contract of settlement. Her attorney had several conferences with her, she spent several weeks considering it and then accepted the agreement, which the evidence shows was satisfied by all parties. Her claim that she was coerced into signing the agreement lacks foundation in the evidence. In fact the agreement was explained completely to her by her attorney and it was only subsequently that she complained of duress with respect to her pension rights. No evidence of duress has been shown. An accord and satisfaction was accomplished, which should determine the case, however since the plaintiff appears pro se the court will determine all the other issues raised by the complaint and special defenses.
The plaintiff has had the advantage of three previous lawsuits as hereinbefore stated, Wallace v. Town of Stratford Board of Education #217922 Bridgeport 7/10/84; Wallace v. Connecticut Commission on Human Rights and Opportunities #249572 Bridgeport 5/6/88, and Marion Wallace v. Town of Stratford Board of Education 874 F. Sup. 67 (1981). She was unsuccessful in all three cases and it is only in the instant case that the Town and CEA were named as individual parties. The three cases were all decided on Motions to Strike, without resolution of the factual and legal claims. As a result of those cases the plaintiff has gained great insight and knowledge into the law governing her case and has been able to make allegations in her many amended complaints, so as to provide the court with some basis for considering her claims. CT Page 8827
 III
Count One states the facts upon which the complaint is based, however it contains no claims for relief, and so the court cannot grant relief thereon. There are many factual claims made therein on which this court has hereinbefore ruled, and those rulings have been adverse to the plaintiff's claims in the remaining counts of the complaint. Count Two alleges breach of her teacher's contract between herself and the Board, and of the contract between the Board and the Stratford Education Association (SEA). That contract was between the SEA and the Board to which the CEA was not a party and without that privity of contract there can be no contractual obligation on the part of CEA and therefore no liability Home Insurance Co. of New York v. Michael Hoffman Fuel Co., 126 F. Sup. 652. To go further if the plaintiff claimed rights under that contract, her remedy was under it by following the grievance procedure provided in the contract before suit could be brought. Even if this count could be construed as a tortious interference with the plaintiff's contractual relationship the elements required for that type of action are not present. See Hart, Nininger and Campbell Asso. Soc v. Rogers, 16 Conn. App. 619, 629. There is no evidence to demonstrate that the CEA induced the Board to breach its contract with the plaintiff, either the original contract of tenure or the accord and satisfaction.
With respect to the Board there is no evidence to show that the Board breached its contract with the plaintiff. It followed all the procedures prescribed by 10-150-153a et seq. up until the parties reached the agreement providing a settlement of all matters. If the claim is of a breach of contract of the June agreement arriving at an accord and satisfaction there is no evidence to demonstrate that the Board breached any of the terms of the contract. The plaintiff has failed to prove by a preponderance of the evidence that the Board breached that contract or the original contract between itself and the, plaintiff. Even if the plaintiff had an actionable claim against any of the three defendants it would have been barred by the Statute of Limitations. Her action on the original contract action would have materialized on January 30, 1981 when she was suspended and on June 20, 1981 on the accord and satisfaction. Section 52-576 provides: "No action . . . on any simple or implied contract, or upon any contract in writing, shall be brought but within six years next after the right of action accrued. . . ." The instant action was instituted by service of process on May 12, 1988 and May 16, 1988 on the Board and the Town and on May 20, 1988 on the CEA which is more than six years from the date her rights if she had any accrued. If the count is based on tort, then it is also barred by 52-577 which provides that "No CT Page 8828 action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."
Count Three is a claim of a denial of due process in violation of the 14th Amendment of the U.S. Constitution and Section 8 Article First of the Connecticut Constitution. She claims, that she was denied her rights to a hearing, to be informed of the nature and cause of the accusations against her; and to confront the witnesses against her. The evidence does not bear out these claims. The Board had set in motion the procedures called for by 10-150 et seq, C.G.S. had provided her with a written notification of the nature of the charges against her, had agreed upon a panel to hear those charges when the Board and the plaintiff agreed to the contract of June 20, 1981, which made any further procedures under 10-150 et seq unnecessary. On the basis of the facts there was no violation of the plaintiff's constitutional rights. The elements of due process, notice, an opportunity to be heard and a complaint tribunal had either been complied with or made unnecessary by the June 20th agreement. Powell v. Alabama, 287 U.S. 45, 68. The plaintiff was not denied due process under the federal or state constitutions.
Had violations in fact occurred her action would be barred by the Statute of Limitations. No specific Statute of Limitations governs actions concerned with the deprivation of constitutional rights, however, the rule in Connecticut and the federal courts is to apply the Tort Statute of Limitations. Wallace v. Town of Stratford Board of Education, 674 F. Sup. 67; Campbell v. New Milford Board of Education, 36 Conn. Sup. 357,363. The plaintiff's right of action if any accrued in January or June of 1981 and this action was instituted on May 12, 1988 which is more than the three years permitted by52-577.
Count Four is a claim of discrimination against the plaintiff under the Connecticut Fair Employment Act 46a-51 et seq. C.G.S. in that the CEA gave full protection to a non-handicapped teacher in 1988 without according the plaintiff the same rights. Paragraph 2 alleges a violation of her protection under the Freedom of Information Laws by the Board, which in fact did not occur. She was given written notice of the Board's meeting on January 30, 1981 by letter dated January 28, 1981 and invited to come to the meeting which she chose not to do and she was thereafter furnished with the reasons on which the board considered her termination. Paragraph three alleges discrimination as a member of a protected minority the physically handicapped under Sections 503 and 504 of the Rehabilitation Act of 1973, Section 10-150-151 et seq C.G.S and Title VII. This court has previously stated that the plaintiff CT Page 8829 did not qualify under the Rehabilitation Act of 1973 and Title VII and that there was no discrimination of 10-150-151 et seq. Paragraph 4 is concerned with CEA giving greater protection to another teacher as hereinbefore stated. No evidence was introduced of any kind to describe the other teachers case so that this court cannot compare both cases to determine if one teacher was given greater protection, by CEA, than the plaintiff herein. The plaintiff has failed to prove by a preponderance of the evidence any of the allegations of this count. To prove that she was discriminated against by CEA would require a showing of some prejudicial treatment which in fact did not occur. The CEA's attorney, provided to the plaintiff, and its field representative did in fact provide an agreement that was beneficial to her under all the facts and accomplished a settlement which she knowingly accepted and which was favorable to her. On her claim of violation of her rights under the "Connecticut Human Rights and Opportunities Act" she was required to take an appeal to the Superior Court from the adverse decision of the Commission, and thereafter to take an appeal of an adverse court decision to the Appellate Courts which she did and neither Appellate Court granted certiorari, therefore that claimed violation is now res judicata. This count also is barred by the Statutes of Limitation 52-576 (six years) and 52-577 (three years) as hereinbefore stated with respect to the prior counts.
Count Five claims a violation of Section 504 of the Rehabilitation Act of 1973. This matter has previously been discussed by the court and ruled against the plaintiff on two grounds: 1) that she is in fact not a handicapped person; and 2) that she has failed to demonstrate that any of the defendants were receiving federal assistance. That count also alleges that the defendants failed to evaluate their practices and policies and the effects thereof and to make available to the handicapped an opportunity for input. No evidence was submitted to show that such evaluation in fact did not occur or that the handicapped were not given an opportunity to offer input. If in fact those actions did not occur the plaintiff has not alleged that those failures in fact damaged or prejudiced her nor has any evidence been submitted to demonstrate such damage or prejudice. The claims hereunder are subject to dismissal on the ground that the plaintiff has not brought the action within the tort Statute of Limitations 52-577. The complaint was served on the defendants on June 12th, 16th and 20th, 1988 more than three years before any of the acts complained of in this count could have occurred, the latest date being June 9th, 1982. See Wallace v. Town of Stratford Board of Education, supra; Campbell v. New Milford Board of Education, supra.
Count Six alleges the defendants' conspired against her to CT Page 8830 create an intimidating atmosphere, the CEA abandoned her, unfavorable news releases appeared, that the defendants took no steps to resolve her suspension, that the parties misinformed her of her pension rights and threatened her with losing them causing her to sign an unconscionable release of her pension rights. No evidence has been introduced to demonstrate that any conspiracy by the defendants existed. In order to succeed in a civil action for conspiracy a plaintiff must show damage from acts committed in execution of the alleged conspiracy. Benoit v. Amalgamated Local 299, 150 Conn. 266, 276; Cole v. Associated Construction Co., 141 Conn. 49, 54. In order to maintain a civil action for conspiracy a plaintiff must show 1) a combination of two or more persons; 2) a criminal or unlawful act or a lawful act of criminal or unlawful means; 3) an act performed in pursuance of the scheme and in furtherance of it; and 4) damage. Williams v. Masela, 116 Conn. 433, 437. James v. O'Connell, 189 Conn. 648, 662. The plaintiff has failed to demonstrate by a preponderance of the evidence that a civil conspiracy in fact existed.
To go further, civil conspiracy is in the nature of a tort action and thus subject to the three year Statute of Limitations52-577 with which the plaintiff has not complied since this action was commenced in June 1988 and the actions complained of occurred in June of 1981. There is no evidence to show that the CEA abandoned her; that the defendants were responsible for unfavorable news releases; that the defendants took no steps to resolve her suspension that the parties misinformed her of her pension rights and threatened her with the loss of such rights or caused her to sign an unconscionable release of her rights. In fact the evidence discloses that CEA worked with her through the accomplishment of the accord. No evidence was presented to show that infavorable news releases if any were caused by the defendants. The evidence is to the effect that the defendants did take steps to resolve her suspension and accomplish it, informed her completely of all her pension rights, did not threaten her with loss of them and did not cause her to sign an unconscionable agreement.
Count Seven has previously been dismissed by this court (Thim, J., September 18, 1988) as to the Board. Since the court has found that the Town is absolved on all counts, the only remaining defendant affected by this court is CEA. However, the plaintiff's last amended complaint contains no Count Seven and since that complaint is the one this court must consider, there is no count seven upon which it can act.
Count Eight alleges unresponsiveness to the plaintiff by the defendants in that they accorded her no protection under 10-151-153 et seq. C.G.S.; The Fair Employment Practices Act CT Page 883146a-51 et seq. C.G.S.; 503 and 504 of the Rehabilitation Act of 1953 Title VII "and pertaining contract and libel laws", all of which constituted discrimination in that their dealings with her set her apart from the protections of the laws. It is difficult for this court to understand this count in the manner in which it is stated. To a great extent this count is repetitious of the preceding counts upon which the court has ruled against the plaintiff particularly with respect to the claims of discrimination. If the count can be construed as a lack of equal protection no basis in the evidence has been presented to compare the measures taken by the defendants with measures taken for other teachers similarly situated to the plaintiff. If the count is interpreted as a violation of the due process clause of the federal and state constitutions then as this court has previously ruled the count is barred by the Statute of Limitations 52-577 C.G.S. The same reasoning and statute would apply to a claim of lack of equal protection.
Count Nine is a claim for damages by reason of loss of wages, income and retirement benefits, loss of standing and reputation, rights of privacy, emotional stress and humiliation. She claims a reinstatement in her position; compensatory and punitive or exemplary damages; costs and attorneys' fees. Since it alleges no facts setting forth a cause of action the court interprets it as her claims for damages and relief under the preceding seven counts.
Under the plaintiff's claim for reinstatement this court has reason to doubt her sincerity. At oral argument at the conclusion of the case she requested this court to allow her one year to decide whether or not to accept reinstatement in the event the court granted such relief. It is patently clear to the court that the plaintiff has failed to prove by a preponderance of the evidence any of the allegations of her complaint. It is also patently clear to the court that all of the claims whether tort of contract claims contained in the eight counts are barred by the pertinent Statutes of Limitations and that her claim under Count Four is res adjudicata. As the court has previously stated the plaintiff and the Board reached an accord in June of 1981 which was satisfied and which determined all the plaintiff's rights.
Judgment may enter for the three defendants, the Board, the Town and CEA on the complaint together with costs of the action.
LEVINE STATE TRIAL REFEREE