*493
 
 I
 

 INTRODUCTION
 

 BLUE, J.
 

 “Neath the elms of old Trinity,” students of that fair college long have sung, “the days are from care and sorrow free.” According to the complaint in this case, however, the days are filled with conspiracy. Since the case comes before me in the context of a motion to strike, these allegations must be taken at face value. The motion to strike raises questions concerning the law of civil conspiracy and intentional infliction of emotional distress. For the reasons stated below, the motion must be denied.
 

 The allegations of the complaint can be briefly described. The plaintiff, Lynn Talit, worked in various capacities in the Trinity College (Trinity) library from 1985 to 1994. After beginning as a part-time film coordinator, she became a full-time film curator and was then demoted to assistant to the music and media services librarian. After filing a grievance over her demotion, she was fired, allegedly as a result of her grievance.
 

 The plaintiff has brought this action, complaining of her demotion and discharge, against three defendants: Stephen Peterson, the college librarian; Suzanne Risley, a fellow library worker who was promoted over the plaintiff to the position of music and media services librarian; and Trinity. Her amended complaint consists of six counts. Counts two and three are directed against Trinity and are unimportant for purposes of the present motion. Counts one, four, five, and six are directed against Peterson and Risley. Count one alleges tortious interference, claiming that Peterson and Risley interfered with the plaintiffs relationship with Trinity. Count four, entitled “conspiracy,” claims that Peterson and Risley conspired with each other against the plaintiff, causing her damage. Count five accuses Peterson and Risley of intentional infliction of emotional distress.
 
 *494
 
 Count six accuses Peterson and Risley of negligent infliction of emotional distress.
 

 Peterson and Risley have now moved to strike counts four and five. (They do not challenge counts one and six at this stage.) The challenge to count four is based on their assertion that “a separate cause of action for ‘conspiracy’ is not recognized in Connecticut.” The challenge to count five essentially argues that the alleged conduct is insufficiently outrageous to constitute the tort of intentional infliction of emotional distress. The challenges to these counts will be considered in turn.
 

 II
 

 CONSPIRACY
 

 The law of civil conspiracy abounds in contradictions. On the one hand, our Supreme Court has stated that “there is no such thing as a civil action for conspiracy.”
 
 Cole
 
 v.
 
 Associated Construction Co.,
 
 141 Conn. 49, 54, 103 A.2d 529 (1954). On the other hand, the court has not only acknowledged the existence of “a civil action for conspiracy,” but helpfully enumerated the elements of that very action.
 
 Williams
 
 v.
 
 Maislen,
 
 116 Conn. 433, 437, 165 A. 455 (1933).
 
 Cole
 
 and
 
 Williams
 
 are in some tension because it is plainly anomalous to describe the elements of a cause of action that does not exist. Both cases, however, have recently been cited as good law.
 
 Marshak
 
 v.
 
 Marshak,
 
 226 Conn. 652, 665, 669, 628 A.2d 964 (1993).
 

 To add to the confusion, the court has, in yet another case, without mentioning the word conspiracy, adopted § 876 (a) of the Restatement (Second) of Torts.
 
 Lamb
 
 v.
 
 Peck,
 
 183 Conn. 470, 472, 441 A.2d 14 (1981). Section 876 provides that “[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him . . . .”
 
 *495
 
 4 Restatement (Second), Torts § 876 (1979). A comment to clause (a) notes that “[i]t is in connection with these common designs or plans that the word ‘conspiracy’ is often used.” Id., § 876, comment (b); see
 
 Halberstam
 
 v.
 
 Welch, 705
 
 F.2d 472, 477 (D.C. Cir. 1983).
 

 The seeming mutual obliviousness of
 
 Williams, Cole,
 
 and
 
 Lamb
 
 causes no little confusion in a case like the present one, where the propriety of a separate conspiracy count in a multicount complaint must squarely be considered. In order to reconcile these authorities, it is necessary to consider both principle and precedent.
 

 To begin with, the principle of vicarious liability for concerted action is firmly embedded in our law.
 
 Lamb
 
 illustrates a familiar- application of this doctrine. Several persons, acting in concert, assault a victim. Some punch him, some kick him, and some block his escape. Each of these assailants is liable for the entire assault. This principle of liability dates back to
 
 Sheldon
 
 v.
 
 Kibbe,
 
 3 Conn. 214, 216 (1819). As
 
 Lamb
 
 puts it, “[b]ecause each participant is vicariously liable for the damages caused by those with whom he acts, there is no logical basis upon which damages can be apportioned.”
 
 Lamb
 
 v.
 
 Peck,
 
 supra, 183 Conn. 473.
 

 The principle of vicarious liability for concerted action, however, actually encompasses two different theories — conspiracy and aiding and abetting.
 
 Lamb
 
 does not distinguish between these theories, but the distinction is important for purposes of this case. The distinction is that a conspiracy involves an
 
 agreement
 
 to participate in a certain activity, whereas aiding and abetting involve giving substantial
 
 assistance
 
 to that activity.
 
 Halberstam
 
 v.
 
 Welch,
 
 supra, 705 F.2d 478.
 

 The substantive tort of civil conspiracy must now be considered.
 
 Williams
 
 v.
 
 Maislen,
 
 supra, 116 Conn. 437, states that such a tort exists and describes its elements as “(1) a combination between two or more persons,
 
 *496
 
 (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff.” The fourth element — the requirement of actual damage to the plaintiff — is the element that distinguishes civil conspiracy from criminal conspiracy. Compare General Statutes § 53a-48 (a).
 

 This distinction can be illustrated by a simple hypothetical. Suppose Al and Bill agree to rob Chris. A1 acquires a firearm to use in the robbery, thus performing an act in furtherance of the conspiracy. At this point, the police step in and arrest Al and Bill before Chris is actually robbed. Al and Bill would plainly be guilty of criminal conspiracy, but they would just as plainly not be liable for civil conspiracy because Chris would not be damaged.
 

 This distinction helps to explain the statment in
 
 Cole
 
 v.
 
 Associated Construction Co.,
 
 supra, 141 Conn. 54, that “there is no such thing as a civil action for conspiracy.” That pronouncement is followed by the statement that “[t]he action is for damages caused by acts committed pursuant to a formed conspiracy rather than by the conspiracy itself.” Id. If the term conspiracy in the statement just quoted is defined as the
 
 agreement, Cole
 
 and
 
 Williams
 
 can suddenly be reconciled. The
 
 Williams
 
 cause of action, by definition, incorporates the element of damages.
 

 This, however, leads to a further question. If Al and Bill actually rob Chris, they are unquestionably hable to Chris. But hable for what? They are plainly hable for the robbery, but are they liable for the conspiracy as well? As a matter of strict logic, the answer should be no. “[A]n interrupted conspiracy will usually not be actionable, while a completed one will inflict no injury
 
 *497
 
 over and above the tort that the conspirators had conspired to commit.”
 
 Niehus
 
 v.
 
 Liberio,
 
 973 F.2d 526, 532 (7th Cir. 1992). This is the case even if A1 is the only person who actually commits the robbery. Bill is doubtless liable to Chris on a conspiracy theory, but this does not change the fact that the conspiracy inflicts no injury beyond the tort that the conspirators had conspired to commit. Anomalous though the tort may be, however, when one turns from logic to precedent, the answer turns out to be yes.
 

 Civil actions for conspiracy have surprisingly deep roots in Connecticut. Our Supreme Court implicitly recognized the cause of action in
 
 Gardner
 
 v.
 
 Preston, 2
 
 Day (Conn.) 205 (1805).
 
 Gardner
 
 was an action on the case, founded on a fraudulent combination. Id. The defendants in
 
 Gardner
 
 took property from a merchant through what was, in essence, a confidence scheme. The defendants prevailed at trial, but the Supreme Court reversed because evidence of the conspiracy had been excluded. Id., 210. The court did not question the theory on which the plaintiff proceeded. Two years later, in
 
 Bulkley
 
 v.
 
 Storer, 2
 
 Day (Conn.) 531 (1807), the court affirmed a plaintiffs judgment in another fraudulent combination case. One century later, the court affirmed the plaintiffs’ judgments in cases based on conspiracies in
 
 March
 
 v.
 
 Bricklayers & Plasterers Union,
 
 79 Conn. 7, 63 A. 291 (1906), and
 
 Pepe Co.
 
 v.
 
 Apuzzo,
 
 98 Conn. 807, 120 A. 681 (1923). In
 
 Crowell
 
 v.
 
 Palmer,
 
 134 Conn. 502, 509, 58 A.2d 729 (1948), a nonsuit entered against a plaintiff in an action to recover damages for discrimination was reversed because the Supreme Court determined that the plaintiff had offered sufficient evidence of a conspiracy.
 

 The cases just cited involved unified causes of action in which allegations of conspiracy were joined with allegations of other substantive torts in a single count. What is the law when a plaintiff, like the plaintiff here,
 
 *498
 
 pleads a separate conspiracy count in a multicount complaint? Although logic once again suggests that a separate conspiracy count should be stricken as redundant; see
 
 Lewis Invisible Stitch Machine Co.
 
 v.
 
 Columbia Blindstitch Machine Mfg. Corp.,
 
 80 F.2d 862, 864 (2d Cir. 1936) (L. Hand, J.); the Connecticut courts have not employed this analysis. Rather, they have looked to see whether the particular conspiracy count in question alleges the
 
 Williams
 
 v.
 
 Maislen,
 
 supra, 116 Conn. 437, elements. If it does, the conspiracy count survives.
 

 The best illustration of this analysis is
 
 Williams
 
 itself. The action in
 
 Williams
 
 was brought in two counts. The first count alleged fraudulent representation; the second count alleged conspiracy. The plaintiff prevailed on both counts, and the entire verdict was upheld by the Supreme Court. Id., 439. The elements of a civil action for conspiracy, as defined by the court, had been made out. Id.
 

 Two published Superior Court decisions, each authorized by a jurist subsequently appointed to the Supreme Court, are consistent with
 
 Williams.
 
 In
 
 Northrup v. Clinton,
 
 14 Conn. Sup. 28,31 (1946)
 
 (Inglis,
 
 J.), the court found an allegation of conspiracy in a multicount complaint sufficiently well pleaded to withstand a demurrer. A similar decision was reached in
 
 Governors Grove Condominium Assn., Inc.
 
 v.
 
 Hill Development Corp.,
 
 36 Conn. Sup. 144, 151-53, 414 A.2d 1177 (1980)
 
 (Borden, J.).
 

 The Supreme Court hinted that another analysis might be appropriate in
 
 Benoit
 
 v.
 
 Amalgamated Local 299,
 
 150 Conn. 266, 188 A.2d 499 (1963). The plaintiff in
 
 Benoit
 
 sued for damages for a loss of earnings, allegedly resulting from a picketing incident, and an assault. His complaint was in two counts. The first count alleged loss of earnings and assault; the second count combined
 
 *499
 
 the allegations of the first count with a count of conspiracy. The court held that the second count was not appropriately pleaded under
 
 Williams
 
 because it failed to allege the purpose or objective of the claimed conspiracy. Id., 268-69. It upheld a plaintiffs verdict on the second count, however, because the allegations of that count repeated the allegations of the first. Id., 276. In the course of its decision, the court opined that “[t]he cause of action . . . could and should have been stated in a single count.” Id. Considered in a vacuum, this statement is in some tension with
 
 Williams,
 
 which approves a separate conspiracy count in a multicount complaint. But
 
 Benoit
 
 favorably cites
 
 Williams
 
 and so, as mentioned, does
 
 Marshak.
 
 In addition, the plaintiff in
 
 Benoit
 
 ultimately prevailed on the second count, in spite of that count’s improper pleading; the count was not stricken.
 
 Williams
 
 remains too well established to be discarded, however anomalous it may seem.
 

 The defendant does not contend that the fourth count of the amended complaint in this case fails to satisfy the
 
 Williams
 
 criteria. That count must be taken as appropriately pleaded. In consequence, at this preliminary stage, both counts one (tortious interference) and four (conspiracy) may stand together. The motion to strike count four must be denied.
 

 Ill
 

 INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
 

 The motion to strike the fifth count can be much more summarily considered. The defendants essentially claim that the alleged conduct was insufficiently outrageous to impose liability. Although outrageousness is indeed an element of the tort of intentional infliction of emotional distress; see
 
 DeLaurentis
 
 v.
 
 New Haven, 220
 
 Conn. 225, 266-67, 597 A.2d 807 (1991); facts potentially supporting a conclusion of outrageousness are
 
 *500
 
 sufficiently pleaded in the complaint to withstand a motion to strike.
 

 The plaintiff does not merely claim that the defendants subjected her to criticism. The plaintiff alleges that the defendants caused her to lose her employment in retaliation for filing a grievance. This “alleged retaliatory conduct is that type of extreme and outrageous conduct which, together with the other elements of the tort, constitutes intentional infliction of emotional distress.”
 
 Class
 
 v.
 
 New Jersey Life Ins. Co.,
 
 746 F. Sup. 776, 778 (N.D. Ill. 1990).
 

 In this case, at a minimum, reasonable people could differ as to whether the defendants’ conduct was extreme and outrageous. “Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability. 1 Restatement (Second), Torts § 46, comment h . . . .” (Citations omitted; internal quotation marks omitted.)
 
 Brown
 
 v.
 
 Ellis, 40
 
 Conn. Sup. 165, 168, 484 A.2d 944 (1984). For this reason, the motion to strike count five must be denied.
 

 IV
 

 CONCLUSION
 

 For the reasons stated above, the motion to strike is denied in its entirety.