[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
In 1996, plaintiff filed a nine-count second amended complaint against the defendants, City of Bridgeport Board of Education; James A. Connelly, Superintendent of Schools; Maria M. Melendez, Assistant Superintendent of Schools; and A. Douglas Dupee, Director of Education for the City of Bridgeport Public Schools. This action arises out of the plaintiffs former employment with the defendants.
The plaintiff alleges the following facts: In August 1992, the plaintiff was hired as the principal of the Benjamin Franklin Education Center. During his second year as principal, he alleges, the defendants directed the plaintiff to alter or falsify students' files or records in order to deceive federal investigators who were to examine the documents contained therein. The plaintiff refused. After the plaintiff's refusal, the defendants tried to pressure the plaintiff to resign. During the investigation conducted by the Office of Special Education Programs, the plaintiffs truthful testimony evidenced the defendants' failure to comply with regulations regarding special education requirements. On February 14, 1994, the plaintiff was terminated for failing to comply with the defendants' allegedly illegal directive to falsify records.
In the first count, the plaintiff alleges that the defendants' wrongful and unlawful termination caused him to suffer loss of employment, salary, benefits and damage to his reputation. The plaintiff further alleges that the defendants violated his rights to free speech under the first andfourteenth amendments to the United States constitution, in violation of42 U.S.C. § 1983. In the second count, he alleges that the CT Page 7614 defendants conspired for the purpose of depriving him of the equal protection of the laws and privileges and immunities under the laws in violation of 42 U.S.C. § 1985. In the third count, the plaintiff alleges that the defendants deprived him of his right to equal protection of the laws as guaranteed by thefourteenth amendment, by hiring a less qualified Hispanic female following his termination. In the fourth count, the plaintiff alleges that he was subjected to discipline and termination by the defendants on account of his exercise of rights guaranteed by the first amendment, in violation of General Statutes § 31-51q. In the fifth count, it is alleged that the defendants breached an implied covenant of good faith and fair dealing by unlawfully demanding that the plaintiff falsify documents, by unlawfully pressuring: the plaintiff to resign, and by threatening to ruin the plaintiffs professional reputation. In the sixth count, the plaintiff alleges a claim for promissory estoppel in that notwithstanding that he changed his position and fully performed as expected, the defendants terminated his employment. The seventh count alleges that the defendants tortiously interfered with his contractual relations. In the eighth count, the plaintiff alleges that the defendants intentionally inflicted emotional distress upon him. In the ninth count, the plaintiff alleges that the defendants' actions in damaging his reputation and professional standing constitute slander.
The defendants have filed a motion for summary judgment as to all counts of the plaintiffs second amended complaint.
 Count One: Wrongful Discharge A. Exhaustion
The defendants argue that they are entitled to summary judgment on count one on the basis that the plaintiff failed to exhaust the administrative remedies under the collective bargaining agreement (CBA).[1] The plaintiff contends that he is not required by law to go through the grievance procedures outlined in the bargaining agreement. The plaintiff further contends that exhausting the administrative remedies would be futile.
General Statutes § 31-51bb provides that: "No employee shall be denied the right to pursue, in a court of competent jurisdiction, a cause of action arising under . . . a state CT Page 7615 statute solely because the employee is covered by a collective bargaining agreement." Moreover, "an employee who does not exhaust the grievance procedures established in a collective bargaining agreement may pursue a cause of action in the Superior Court if the cause of action is premised on an independent statutory claim." Genovese v. Gallo Wine Merchants. Inc.,226 Conn. 475, 481, 628 A.2d 946 (1993). However, the exhaustion requirement is retained in cases "in which the plaintiffs claim arises from a right dependent on the provisions of the collective bargaining agreement." Id., 482 n. 8.
Here, Article VI, paragraph D, of the CBA between the parties provides: "No administrator will be disciplined, reprimanded, suspended, dismissed, deprived of his professional advancement or given an adverse evaluation of his professional service without just cause." Since the plaintiffs wrongful discharge claim arises from a right dependent on the provisions of the CBA, the plaintiff must exhaust his administrative remedies unless an exception applies.
"One of the limited exceptions to the exhaustion rule arises when recourse to the administrative remedy would be demonstrably futile or inadequate. . . . An administrative remedy is futile or inadequate if the agency is without the authority to grant the requested relief." (Internal quotation marks omitted.) Mendillov. Board of Education, 246 Conn. 456, 467, 711 A.2d 1177 (1998).
In Mendillo v. Board of Education, the plaintiff, a high school principal, alleged that the superintendent of her school district "engaged in a deliberate effort to harass and torment [her] . . . making her continued employment with the . . . school district, for all practical purposes, impossible." (Internal quotation marks omitted.) Id., 465-66. While the plaintiff alleged that she was constructively discharged, the superintendent argued that the plaintiff voluntarily resigned. Id. The court held that this is not the kind of factual dispute that fits within either the purpose or the language of General Statutes § 10-151 (d), which provides termination procedures for tenured teachers. Id., 469. The court further held that since the board "would not have been empowered, under [§] 10-151
(d), to determine whether a constructive discharge took place because that question is not one of the statutorily defined subjects of a hearing under the statute," recourse to the administrative remedy of § 10-151 (d) would have been futile. Id. CT Page 7616
Likewise, the dispute between the plaintiff and the defendants involves a question as to whether the plaintiff was constructively discharged. Article VI of the CBA dealing with grievance and arbitration procedures provides: "The purpose of this procedure is to secure at the lowest possible administrative level, equitable solutions to problems which may arise from time to time with respect to the provisions of this agreement." The procedure covers complaints that an administrator "has been treated unfairly or inequitably because of a violation, misinterpretation or misapplication of the provisions of this agreement or of established policy or practice" the plaintiff was constructively discharged appears not to be one of the subjects covered by the grievance and arbitration procedure pursuant to the CBA.
Therefore, the court denies the defendants' motion for summary judgment in so far as it relies upon failure to exhaust administrative remedies.
B. Voluntary Resignation
The defendants also argue, as would be expected in a difference as to alleged constructive discharge, that they are entitled to summary judgment on count one on the basis that the plaintiff voluntarily resigned from his position. The plaintiff contends that he did not voluntarily resign. Here, the defendants have submitted the letter of resignation signed by the plaintiff. On the other hand, the plaintiff has presented evidence, including an affidavit, raising a genuine issue as to whether the plaintiff voluntarily or involuntarily resigned. For instance, the plaintiff attests that he signed the resignation letter under duress. Therefore, summary judgment cannot be had as to this aspect, there being an obvious question of material fact.
C. Civil Rights Violation under 42 U.S.C. § 1983
The defendants also argue that they are entitled to summary judgment on count one because the plaintiffs alleged speech was not spoken in his role as a citizen on a matter of public concern. The plaintiff contends that he spoke out as a private citizen on matters not merely relating to condition of his employment, but on matters of public concern.
Here, it should be noted that "exhaustion of state CT Page 7617 administrative remedies should not be required as a prerequisite to bringing an action pursuant to 1983." (Internal quotation marks omitted.) Fetterman v. University of Connecticut,192 Conn. 539, 549, 473 A.2d 1176 (1984).[2]
"The determination whether a public employer has properly discharged an employee for engaging in speech requires a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." (Internal quotation marks omitted.) White Plains Towing Corp. v. Patterson,991 F.2d 1049, 1058 (2nd Cir.), cert. denied, 510 U.S. 865,114 S.Ct. 185, 126 L.Ed.2d 144 (1993). "For an employee to establish a prima facie case, he must prove that (1) his speech can be fairly characterized as constituting speech on a matter of public concern; and (2) [the] speech was at least a substantial or motivating factor in the discharge. The first element is a question of law, the second a question of fact." (Citations omitted; internal quotation marks omitted.) Frank v. Relin,1 F.3d 1317 1328-29 (2nd Cir.), cert. denied, 510 U.S. 1012,114 S.Ct. 604, 126 L.Ed.2d 569 (1993). "If both of these elements are proven by [the employee], [the government employer] may still avoid liability if he establishes that either: (3) he would have made the same decision in the absence of the protected conduct; or (4) [the employee's] conduct interfered with the [employer's] effective and efficient fulfillment of its responsibilities to the public. (Internal quotation marks omitted.) Schnabel v.Tyler, 230 Conn. 735, 750, 646 A.2d 152 (1994), citing Frank v.Relin, supra, 1 F.3d at 1329.
Here, the plaintiffs speech dealt with the Education Center's noncompliance with certain special education laws and he argues that the future funding of the Center would depend on the outcome of the inspectors' evaluation. The Board of Education's compliance with federal laws and funding for public schools are obviously matters of public concern. Whether the plaintiffs speech with regard to compliance was a substantial or motivating factor in his discharge is a question of fact. Therefore, the court denies the defendants' motion for summary judgment as to count one regarding this rationale because there is a material issue as to whether the plaintiffs dismissal was motivated by his speech.
 Count Two: Conspiracy
CT Page 7618
The defendants next urge summary judgment because the defendants are all agents of the same entity and thus cannot conspire to violate civil rights under 42 U.S.C. § 1985. The plaintiff contends that the individual defendants, because ofpersonal interests, conspired to force the plaintiff out of the school.
According to the intracorporate conspiracy doctrine, "[e]mployees of a corporation acting in the scope of their employment cannot conspire with one another or with the corporation that employs them; each acts for the corporation and the corporation cannot conspire with itself." Day v. GeneralElectric Credit Corp., 15 Conn. App. 677, 684, 546 A.2d 315, cert. denied, 209 Conn. 819, 551 A.2d 755 (1988). "A corporation cannot conspire with itself anymore than an individual can, and hence it appears to be the general rule that a corporation cannot conspire with its officers, agents or employees when they are acting solely for the corporation." See v. Bridgeport R. C.Diocesan Corp., Superior Court, judicial district of Bridgeport, Docket No. 300948 (July 31, 1997, Thim, J) (20 Conn. L. Rptr. 271, 277). Moreover, "simply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation." (Internal quotation marks omitted.) Willow Springs Property Group v. Cherney, Superior Court, judicial district of Danbury, Docket No. 327777 (October 8, 1997, Leheney,J). One exception to this rule "requires the plaintiff to allege that an agent of the corporation has an independent personal stake in achieving the corporation's illegal objective." Id.
The intracorporate conspiracy doctrine is equally applicable to governmental entities such as school districts. Larson v.Miller, 76 F.3d 1446, 1456 n. 6 (8th Cir. 1996). For example, inHerrmann v. Moore, 576 F.2d 453, 459 (2nd Cir.), cert. denied,439 U.S. 1003, 995 S.Ct. 613, 58 L.Ed.2d 679 (1978) the plaintiff, a tenured professor, was dismissed. The However, the court agreed that one reason for the plaintiffs discharge was that he had testified in court. However, the court did not determine that the defendants conspired to discharge the plaintiff, and found that every one of the defendants was either a trustee or faculty member of the school and was acting in that capacity in connection with the discharge. The court further held that "the complained-of injury was the discharge of the plaintiff by the corporation, and inasmuch as each of the persons shown to CT Page 7619 have any purpose to further the discharge was a trustee or employee of the corporation and acting for it . . .," the defendants were entitled to summary judgment. Id.
Here, the alleged conspiracy is essentially a single act by the Board of Education acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment. Moreover, similar to the Herrmann case, the complained of injury here is the discharge of the plaintiff by the Board of Education. Connelly, Melendez and Dupee were agents of the Board of Education and because the plaintiff has not sufficiently alleged that these personal defendants had a personal stake in forcing the plaintiff to resign, the defendants' motion for summary judgment as to count two is granted as to them.
 Count Three: Equal Protection
The defendants contend that they are entitled to summary judgment because the plaintiff has failed to show that similarly situated persons have been treated differently.
"Equal protection provisions of the federal and state constitutions are of the same meaning and create similar mitations." State v. Anonymous, 29 Conn. Sup. 333, 335,287 A.2d 111 (1972). "The concept of equal protection [under both the state and federal constitutions] has been traditionally viewed as requiring the uniform treatment of persons standing in the same relation to the governmental action questioned or challenged. . . ." (Internal quotation marks omitted.) Hunt v.Prior, 236 Conn. 421, 443, 673 A.2d 514 (1996). "Equal protection of the law prohibits the unequal treatment of those who aresimilarly situated." Golab v. New Britain, 205 Conn. 17, 25,579 A.2d 1297 (1987). (Emphasis in original).
Here, the plaintiffs equal protection claim is explicitly based on gender discrimination and implicitly based on racial discrimination. He alleges that he was qualified for the position of principal and that he was replaced by a less qualified, Hispanic female. The parties have cited sparse case law. One somewhat talismanic failure of pleading urged by defendants is that nowhere does plaintiff allege he was replaced by one,similarly situated, who received unequal treatment. Beyond Golab,supra, this notion also finds expression in Yale Auto Parts. Inc, v. Johnson, 758 F.2d 54 (2d Cir. 1985). However, it would seem to CT Page 7620 exalt form over substance to insist on such magic words in this pre-trial phase in a context where plaintiffs complaint insists the replacement was "less qualified." Surely, the law's ostensible concern with the correct language ought not be deemed to require one weaken his attack for formulaic reason. Plaintiffs plea seems to be that his replacement wasn't even
similarly situated, a step beyond unequal treatment of the similarly situated. The linguistic problem does not appear to raise a sufficient impediment to enhance a motion to strike and for summary judgment, as sought here, it is rather more wholly inadequate. Summary judgment must be denied as to count three.
 Count Four: Unlawful Retahation
The defendants adopt for this count the argument utilized by them against the § 1983 claim of count one, correctly noting that our appellate court deems C.G.S. Sec. 31-51q[3] claims as analogous to 1983 claims. Cotto v. United Technologies Corp.,48 Conn. App. 618, 629 (1998), cert. granted on other grounds,245 Conn. 915 (1998). This incorporation by reference, however, hitches defendants' wagon to a falling star, as summary judgment has been denied on the § 1983 claim and so is denied here.
 Count Five: Covenant of Good Faith and Fair Dealing
The defendants seek summary judgment on this count because: (1) the plaintiff voluntarily resigned; (2) the court lacks subject matter jurisdiction[4] and (3) if the facts alleged by the plaintiff were proven, they would not rise to the level of a claim for the breach of the covenant of good faith and fair dealing. The plaintiff relies on his previously expressed responses to the defendants' first two arguments. As to the third argument, the plaintiff contends that there is a genuine issue of material fact as to whether his allegations rise to the level of a claim for breach of the covenant of good faith and fair dealing.
The court must first address the defendant's subject matter jurisdiction argument, which is based on failure to exhaust administrative remedies. The exhaustion doctrine was previously discussed with regard to count one wherein and it was stated that the requirement applies where "the plaintiffs claim arises from a right dependent on the provisions of the collective bargaining agreement." Genovese v. Gallo Wine Merchants. Inc., supra,226 Conn. 482 n. 8. As in count one, the plaintiff must exhaust CT Page 7621 because his claim of good faith and fair dealing arises from a right dependent on the provisions of the CBA. For example, article VI, section 9, paragraph D, of the parties' CBA provides: "No administrator will be disciplined, reprimanded, suspended, dismissed, deprived of his professional advancement or given an adverse evaluation of his professional service without just cause." Since the plaintiffs claim for breach of the covenant of good faith and fair dealing would seem to be based on this "just cause" provision, it might well be said it arises from a right dependent on a provision of the parties' CBA. Thus, the plaintiff would be required to exhaust the administrative remedies unless an exception to the requirement applies.
As with count one, plaintiff's claim here in count five involves a question as to whether the plaintiff was constructively discharged. Because the CBA does not provide for the determination of this threshold issue, recourse to the administrative remedies pursuant to the CBA would be futile because no authoritative resolution could emerge.
Since the plaintiff is not required to exhaust administrative remedies, it must be determined whether the defendants could be liable, as a matter of law, for the plaintiffs claim of breach of the covenant of good faith and fair dealing. The defendant's first argue that the plaintiff voluntarily resigned and therefore cannot maintain a claim for breach of the covenant of good faith and fair dealing based on his allegedly wrongful termination. As discussed above, there is simply a genuine issue of material fact as to whether the plaintiff voluntarily resigned.
The defendants also argue that the claim would fail because even if the plaintiff's allegations were true, they would not constitute a breach of the covenant of good faith and fair dealing. "Good faith is a subjective concept that implicates the sincerity of the motives animating the person involved." Casertav. Zoning Board of Appeals, 219 Conn. 352, 361, 593 A.2d 118
(1991). "[S]ummary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions." (Internal quotation marks omitted.)Suarez v. Dickmont Plastics Corp, 229 Conn. 99, 111. 639 A.2d 507
(1994). Moreover, "[w]hether. good faith: exists is a question of fact to be determined from all the circumstances." Kencizierskiv. Goodson, 21 Conn. App. 424, 430, 574 A.2d 249 (1990). Therefore, the court denies the defendants' motion for summary CT Page 7622 judgment as to count five.
 Count Six: Promissory Estoppel
The court finds one point (amongst many put forth) dispositive. Broadly speaking: "An action for promissory estoppel generally lies when there is no written contract, or the contract cannot be enforced for one reason or another. Thus, it is an action outside the contract." Clock Tower Mill Development v.Cambridge Development Corp., Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 555348 (April 23, 1996, Lavine, J.)
Specifically speaking, it has been held that when valid contracts exist, recovery cannot be obtained under the doctrine of promissory estoppel. Lombardi v. Marketing Corp. of America, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 293281 (May 23, 1994, Moran, J.) (plaintiff cannot assert a claim for promissory estoppel when a valid, written at-will employment agreement exists).
Here, there is a valid written contract between the plaintiff and the defendants, and therefore a claim of promissory estoppel cannot lie. Accordingly, the court grants the defendants' motion for summary judgment as to count six.
 Count Seven: Tortious Interference
This count must be allowed to remain because, at bottom, and in open dispute, is whether the individuals acted in purely "on the job" fashion or with personal motivation and animus. As a result, defendants' generally correct contention, that an agent of an employer cannot be held for interfering with an employer-employee contract, is not dispositive. See, Gallagher v.Hamilton Stamford Federal Credit Union, Superior Court, J.D. Hartford/New Britain, at Hartford, No. 045989 (October 18, 1994, Holzberg, J.) and Murray v. Bridgeport Hospital,40 Conn. Sup. 56, 60-61, 480 A.2d 610
(1984). If the agents were acting beyond the scope of their duties, an interference count might lie. See Gallagher, supra, andMurray, supra. Summary judgment denied.
 Count Eight: Intentional Infliction of Emotional Distress
The defendants next argue that they are entitled to summary CT Page 7623 judgment because: (1) the plaintiff was neither terminated nor discharged; and (2) the facts, as alleged by the plaintiff, even if proven, do not constitute "extreme and outrageous conduct," because the plaintiff was, at all times relevant, represented by counsel and a union official. The plaintiff contends that there is a genuine issue of material fact as to whether his resignation was voluntary or involuntary, and therefore summary judgment is improper. The plaintiff further contends that there is a genuine issue as to whether he was pressured into resigning and whether as a result of the pressure, he suffered emotional distress.
As discussed earlier is a genuine issue of fact as to whether the plaintiff voluntarily resigned. The defendants, therefore cannot prevail on count eight on the argument that plaintiff was neither terminated nor discharged.
As to defendant's next argument (that even if plaintiff is correct, no extreme or outrageous conduct may be deemed present): "In order for the plaintiff to prevail in a claim for intentional infliction of emotional distress, four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiffs distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. . . . Thus, [i]t is the intent to cause injury that is the gravamen of the tort. . . ." (Internal quotation marks omitted.)Drew v. K-Mart Corp., 37 Conn. App. 239, 251, 655 A.2d 806
(1995). "Whether the defendant's conduct and the plaintiffs resulting distress are sufficient to satisfy either of these elements is a question, in the first instance, for this court. Only where reasonable minds can differ does it become an issue for the jury." Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17,18, 597 A.2d 846 (1991). In Talit v. Peterson, 44 Conn. Sup. 490,498, 692. A.2d 1322 (1995), the plaintiff alleged that the defendants caused her to lose her job in retaliation for filing a grievance. The court held that this "alleged retaliatory conduct is that type of extreme and outrageous conduct which, together with the other elements of tort, constitutes intentional infliction of emotional distress." (Internal quotation marks CT Page 7624 ommitted.) Id. The court further held that "at a minimum, reasonable people could differ as to whether the defendants' conduct was extreme and outrageous." Id. Similar to Talit, here the plaintiff alleges that the defendants caused him to lose his job in retaliation for his honesty when questioned by federal investigators regarding the school's programs. Since reasonable people could differ as to whether the defendants' conduct was extreme and outrageous, this issue is for the jury. Therefore, the court denies the defendants' motion for summary judgment as to count eight.
 Count Nine: Slander
Finally, the defendants argue that they are entitled to summary judgment because the facts do not rise to the level of a cause of action in slander, in that the plaintiff, a public official, has failed to allege actual malice. The defendants further argue that the statements alleged by the plaintiff to be slanderous represent the truth. The plaintiff contends that he has alleged actual malice and that there is a genuine issue of material fact as to whether the defendants' statements were truthful.
"Under the first amendment to the United States constitution, a public official, in order to recover damages for a defamatory falsehood relating to his or her official conduct must prove that the statement was made with actual malice. . . . Actual malice requires that the statement, when made, be made with actual knowledge that it was false or with reckless disregard of whether it was false." (Citations omitted). Woodcock v. JournalPublishing Co., 230 Conn. 525, 535, 646 A.2d 92 (1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1098, 132 L.Ed.2d 1066 (1995). "As a general rule, whether or not actual malice exists in a given case is an issue of fact to be determined at trial."Gallagher v. Jackson, Superior Court, judicial district of New Haven at New Haven, Docket No. 351594 (April 3, 1997, Clark, J.).
Here, the plaintiff alleges that the defendants knew or should have known that all of the derogatory or defamatory statements they made concerning the plaintiff were false and untrue. (Count 9, ¶ 77). Since the plaintiff has also submitted evidence raising a genuine issue of material fact as to whether the allegedly defamatory statements were true, the court denies summary judgment on this count. CT Page 7625
Thus, summary judgment is denied as to all counts except two and six. As to count two summary judgment is granted to theindividual defendants.
NADEAU, J.